UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TAKI & DA PTE LTD., <br><br>Plaintiff, <br><br>vs. <br><br>CITIBANK N.A., VINEANDFIG LLC, TITAN BLOCK INTERNATIONAL LTD., <br><br>Defendants. | 4:23-CV-04163-RAL <br><br><br>OPINION AND ORDER DENYING EX PARTE APPLICATION FOR WRIT OF ATTACHMENT |

Plaintiff Taki & DA PTE LTD, a Singapore corporation, sued Defendants Citibank N.A. (Citibank), Vineandfig LLC (Vineandfig), and Titan Block International LTD (Titan Block), over a money transfer gone wrong. Doc. 8. In short, Plaintiff is attempting to recover money a hacker allegedly caused it to transfer to the wrong account. Plaintiff has now filed an ex parte application for a writ of attachment asking this Court to attach and restrain a bank account held by Titan Block in Pennsylvania. Doc. 10.

I.  **Facts as Alleged in Amended Complaint and Affidavit**

Plaintiff initiated a money transfer on November 4, 2022, intending to transfer $976,000 from its account at CIM Banque in Switzerland to the account of Vitaro Energy SRL (Vitaro) in Romania. Doc. 8 at ¶ 9; Doc. 12 at ¶ 2. Plaintiff claims that a hacker intercepted the wire transfer information Vitaro sent to Plaintiff and altered the information to fraudulently induce Plaintiff to transfer the $976,000 into Vineandfig's bank account at Citibank. Doc. 8 at ¶ 10; Doc. 12 at ¶ 3. CIM Banque used the Bank of New York Mellon as an intermediary for the transfer, and the Bank

1

of New York Mellon completed the transfer to Vineandfig's bank account at Citibank on November 4, 2022. Doc. 8 at ¶¶ 11–12; Doc. 12 at ¶ 4. Citibank credited Vineandfig's account with the $976,000 that same day. Doc. 8 at ¶ 13; Doc. 12 at ¶ 5.

On November 8, Vineandfig wire transferred $380,000 of the allegedly stolen funds from its account at Citibank to Titan Block's account at Customers Bank in Pennsylvania, account number 3962189. Doc. 8 at ¶ 14; Doc. 12 at ¶ 6. The following day, Vineandfig transferred $500,000 of the funds to this same account of Titan Block. Doc. 8 at ¶ 15; Doc. 12 at ¶ 7.

Plaintiff claims that it first learned of the fraud on November 8, 2022, when Vitaro asked why Plaintiff had not wired the funds contemplated by the parties. Doc. 12 at ¶ 8. Plaintiff alerted its lender CIM Banque, its intermediary the Bank of New York Mellon, and Citibank that the funds had been fraudulently directed into Vineandfig's Citibank account. Doc. 8 at ¶ 16; Doc. 12 at ¶ 9. Plaintiff also filed a complaint with the Federal Bureau of Investigation. Doc. 8 at ¶ 19; Doc. 12 at ¶ 10.

Plaintiff filed this lawsuit in October 2023. Doc. 1. That same month, Plaintiff served a subpoena on Customers Bank seeking information about Titan Block's account number 3962189. Doc. 12 at ¶ 11; Doc. 12-6. Customers Bank responded to the subpoena on December 20, 2023. Doc. 12 at ¶ 12. Plaintiff has now filed a statement from Titan Block's account number 3962189 at Customers Bank. Doc. 12-7; Doc. 12 at ¶ 12. The statement shows credits and debits on the account for November 2022, including a November 8, 2022 deposit by Vineandfig for $380,000 and a November 9, 2022 deposit by Vineandfig for $500,000. Doc. 12-7 at 3. The statement also shows deposits by 19 other entities, however, two of which were for over a million dollars. Doc. 12-7. Plaintiff applied for the writ of attachment in January 2024. Doc. 10. As of now, Plaintiff has not filed any returns, admissions, or waivers of service in CM/ECF. There is no indication

that any defendant has been served with a summons and complaint or that Titan Block or Customers Bank know that Plaintiff is attempting to obtain a writ of attachment in the District of South Dakota.

## II. Analysis

### A. Federal Jurisdiction

Having only limited jurisdiction, a district court's first step in any federal lawsuit must be to ensure that it has the power to decide the case. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Hart v. United States, 630 F.3d 1085, 1089 (8th Cir. 2011). Plaintiff, who bears the burden of proving jurisdiction, claims that this Court has both federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under § 1332. Doc. 8 at ¶ 1.

#### 1. Federal Question Jurisdiction

This court's "federal question jurisdiction extends only to 'civil actions arising under the Constitution, laws, or treaties of the United States.'" Mamot Feed Lot & Trucking v. Hobson, 539 F.3d 898, 902 (8th Cir. 2008) (quoting 28 U.S.C. § 1331). The well-pleaded complaint rule determines whether a case arises under federal law. Great Lakes Gas. Transmission Ltd. P'ship v. Essar Stell Minn. LLC, 843 F.3d 325, 329 (8th Cir. 2016). Federal question jurisdiction exists under that rule "if the well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Id. (cleaned up and citation omitted). The party asserting federal jurisdiction bears the burden of proving it, Kokkonen, 511 U.S. at 377, and courts have no duty to make jurisdictional arguments the party did not raise itself, Atlas Biologicals, Inc. v. Kutrubes, 50 F.4th 1307, 1322 (10th Cir. 2022) ("[A] federal court is not obliged to conjure up possible theories to support subject-matter jurisdiction." (cleaned up and citation omitted)); Welsh v. Excel

Telecomms., 101 F.3d 704 (7th Cir. 1996) (unpublished) (stating that it was not "our job to ferret out legal arguments for the plaintiff" when discussing federal question jurisdiction).

Plaintiff's amended complaint alleges that federal question jurisdiction exists based upon "the enumerated violations of the" Check Clearing Act of the 21st Century (Check 21 Act). Doc. 8 at ¶ 1. The Check 21 Act "allows banks to create negotiable instruments called 'substitute checks' that are the legal equivalent of the original checks for which they were created." Triffin v. Com. Bank, N.A., No. 07-CV-1759 (WJM), 2007 WL 1875533, at *2 (D.N.J. June 28, 2007). "The purpose of the Check 21 Act was to provide for check truncation in order to improve the check processing system, to foster innovation in the check collection system without mandating receipt of checks in electronic form, and to improve the overall efficiency of the Nation's payment system." Id. (cleaned up and citations omitted). Plaintiff does not cite to any particular section of the Check 21 Act and does not explain how the Act was violated. Rather, the first cause of action, brought against Citibank, alleges that Citibank is liable to Plaintiff under the Uniform Commercial Code (UCC) for transferring some of the money out of Vineandfig's account despite knowing that the wire transfer to Vineandfig was fraudulent. The second cause of action, brought against Vineandfig and Titan Block, alleges that these two defendants defrauded Plaintiff. And the third cause of action, brought against Titan Block alone, asserts a claim for unjust enrichment. These allegations lack any obvious connection to the Check 21 Act.

Plaintiff also alleges that Citibank violated "State and Federal banking law." Doc. 8 at ¶ 31. Plaintiff does not cite to a particular "Federal banking law," however, and the mere reference to federal law in a complaint is not enough to create federal question jurisdiction. See MSOF v Corp. v. Exxon Corp., 295 F.3d 485, 490 (5th Cir. 2002) (holding that complaint alleging state-law torts and whose only reference to federal law was an allegation that defendant's facility "was

maintained in violation of federal regulations *as well as* in violation of state and local regulations" did not "suffice to render the action one arising under federal law"); Martinez v. U.S. Olympic Comm., 802 F.2d 1275, 1280 (10th Cir. 1986) (holding that complaint that alleged common-law negligence and conclusorily asserted that federal constitutional rights were violated and federal questions were involved did not satisfy well-pleaded complaint rule).

The closest Plaintiff comes to pleading a claim arising under federal law is its first cause of action, which relies on UCC §§ 4A-205 and 4A-207. Doc. 8 at ¶¶ 24, 27. Article 4A of the UCC addresses the rights and liabilities of parties to wire transfers. First Sec. Bank of N.M., N.A. v. Pan Am. Bank, 215 F.3d 1147, 1152 (10th Cir. 2000). Citation to the UCC would not normally suggest federal jurisdiction. See Hemmy v. A-1 Auto Sales, No. 15-00432 DKW RLP, 2015 WL 6181760, at *5 (D. Haw. Oct. 20, 2015) ("[A]ll claims relating to the Uniform Commercial Code arise under state rather than federal law, and, therefore, do not provide a court with federal question jurisdiction."). But much of Article 4A has been incorporated into Subpart B of Federal Reserve Board Regulation J, the provision of the Code of Federal Regulations governing funds transfers made through the Fedwire Funds Service,[1] 12 C.F.R. § 210.25(a) & (b); Hutchins v. Modern Woodmen Fraternal Fin., 978 F. Supp. 2d 637, 642 (S.D. Miss. 2013).

There is no clear consensus on whether a case involving Regulation J "arises under" federal law. The Fourth Circuit has found that Regulation J preempts state law claims involving conduct that falls within Subpart B of the regulation. Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220, 223–24 (4th Cir. 2002). Some district courts have relied on the Fourth Circuit's preemption decision to find that claims challenging actions that fall within Regulation J raise a federal

---

[1] Fedwire Funds Service (Fedwire) means "the funds-transfer service owned and operated by the Federal Reserve Banks that is used primarily for the transmission and settlement of payment orders governed by [12 C.F.R. § 210.25 et seq.]." 12 C.F.R. § 210.26.

5

question. See Utility Supply Co. v. AVB Bank, No. 10-CV-124-JHP, 2010 WL 4941506, *4–5 (N.D. Okla. Nov. 30, 2010); Bensman v. Citicorp Tr., N.A., 354 F. Supp. 2d 1330, 1333 (S.D. Fla. 2005). As the Sixth Circuit pointed out in AmSouth Bank v. Dale, 386 F.3d 763 (6th Cir. 2004), however, the Fourth Circuit's decisions concerning Regulation J only dealt with "*ordinary* preemption, rather than the complete preemption that would justify original arising-under jurisdiction." Id. at 776. The Sixth Circuit found that unlike Congress, the Federal Reserve Board did not have the authority to completely preempt a state law cause of action, and thus held that Regulation J did establish federal question jurisdiction for a bank's declaratory judgment action against some insurance companies. Id. at 776–77. Several district courts have relied on Dale to find that Regulation J does not create federal question jurisdiction based on complete preemption. Hutchins, 978 F. Supp. 2d at 642–45; Clayton v. Dollar Bank, 2:21-CV-843, 2021 WL 4552966, at *6 (W.D. Pa. Oct. 5, 2021); C4Polymers, Inc. v. Huntington Nat'l Bank, No. 12 CV 2400, 2013 WL 102644, at *2–3 (N.D. Ohio Jan. 8, 2013). At least one district court has found that claims based on Regulation J posed a substantial federal question because they required the court to determine whether a bank's security procedures were commercially reasonable under the Regulation. Tex. Brand Bank v. Luna & Luna, LLP, 3:14-CV-1134-P, 2014 WL 11515857, at *2–3 (N.D. Tex. Aug. 29, 2014). District courts have declined to find a substantial federal question under different circumstances. See Clayton, 2021 4552966, at *8 (distinguishing Texas Brand Bank and finding no substantial federal question where defendant merely sought to create federal question jurisdiction based on allegation that its compliance with Regulation J was a defense to plaintiff's negligence claim); C4Polymers, Inc., 2013 WL 102644, at *3 (finding no substantial federal question present where plaintiff brought state law claims against defendant for allegedly mistakenly wiring money to bank account in Russia). Courts have also disagreed over whether

Regulation J creates a private right of action. Compare Clayton, 2021 4552966, at *7 (stating that there is "limited authority" on whether Regulation J creates a private right of action and deciding that the better view is that no such private right of action exists), with Donmar Enters. v. S. Nat'l Bank of N.C., 828 F. Supp. 1230, 1234 (W.D.N.C. 1993) (concluding that Regulation J creates a private cause of action), aff'd 64 F.3d 944 (4th Cir. 1995).

Even if there are some instances where cases involving Regulation J arise under federal law, Plaintiff has not cited Regulation J. The best approach would seem to be to require Plaintiff to make the Regulation J argument itself.

### 2. Diversity Jurisdiction

Plaintiff alleges that diversity jurisdiction exists because it is a Singapore corporation, Citibank has its principal place of business in South Dakota, Vineandfig is an Oregon LLC, and Titan Block is a British Virgin Islands corporation. Doc. 8 at ¶¶ 1–4. Unlike a corporation, "a limited liability company is a citizen of every state of which any member is a citizen." NFS Leasing, Inc. v. SA Hosp. Acquisition Grp., LLC, No. 4:23-cv-00203-AGF, 2023 WL 2162111, at *1 (E.D. Mo. Feb. 22, 2023). Plaintiff does not plead the citizenship of the members of Vineandfig, and courts have required plaintiffs to provide that information before determining whether diversity jurisdiction exists. Id. at *1–2.

### 3. Personal Jurisdiction

This Court also has significant concerns about whether it has personal jurisdiction over Vineandfig and Titan Block. A federal court sitting in diversity may exercise jurisdiction over nonresident defendants only if both the forum state's long-arm statute and the Fourteenth Amendment's Due Process Clause are satisfied. Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir. 1991). Because South Dakota's long-arm statute confers jurisdiction to the full extent

permissible under the Due Process Clause, the question here would be whether asserting personal jurisdiction over Vineandfig and Titan Block comports with due process. Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994) (applying South Dakota law).

Personal jurisdiction under the Due Process Clause may be either general or specific. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924–25 (2011). Courts with general jurisdiction over a defendant may hear "any and all claims" against the defendant, even if those claims are unrelated to the defendant's contacts with the forum state. Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) (quoting Goodyear, 564 U.S. at 919). For general jurisdiction to exist, the defendant's contacts with the forum state must be "so 'continuous and systematic'" that the defendant is "essentially at home" there. Goodyear, 564 U.S. at 919 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 317 (1945)). Specific jurisdiction, by contrast, may be based on a defendant's solitary or irregular contact with the forum state. Daimler, 571 U.S. at 126–27. Unlike general jurisdiction, however, specific jurisdiction is limited to suits arising out of or relating to the defendant's contact with the forum state. Goodyear, 564 U.S. at 919.

Courts may exercise specific jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts" with the state such that having to defend a lawsuit there "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316 (quotation omitted). These minimum contacts must be based on "some act by which the defendant purposefully avails" himself of the forum state "such that he should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474–75 (1985) (quotations omitted). It is the defendant, rather than the plaintiff or a third party, who must establish the minimum contacts in the forum state. Walden v. Fiore, 571 U.S. 277, 284 (2014). Moreover, the defendant's contacts must be "with the forum State itself, not . . . with persons who reside there."

Id. at 285; see also id. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." (quoting Burger King, 471 U.S. at 475)).

Plaintiff has not pleaded any facts suggesting that this Court has either general or specific personal jurisdiction over Vineandfig or Titan Block under these standards. And while the personal jurisdiction analysis changes a bit when a federal statute authorizes service of process and in certain federal question cases, see Tyrrell for Estate of Tyrrell v. BNSF Ry. Co., No. 4:17-CV-04120-RAL, 2018 WL 2944529, at *4 (D.S.D. June 12, 2018) (describing the personal jurisdiction test when a federal statute authorizes service of process); Adams v. Unione Mediterranea Di Sicurta, 364 F.3d 646, 650–52 (5th Cir. 2004) (discussing the personal jurisdiction test when a claim arises under federal law and the defendant is not subject to jurisdiction in any particular state), Plaintiff does not suggest that those circumstances exist here or that there is personal jurisdiction under that different test.

### 4. Writ of Attachment Remedy

Relying on Federal Rule of Civil Procedure 64 and SDCL Chapter 21-17A, Plaintiff asks this Court to issue a writ of attachment for bank account number 30950672 held by Titan Block at Customers Bank in Pennsylvania. Doc. 10. Rule 64 incorporates state prejudgment remedies, including writs of attachments,[2] of the state in which the district court sits. Fed. R. Civ. P. 64(a) ("At the commencement of and throughout an action, every remedy is available that, under the law

---

[2] "For purposes of [Rule 64(b)], attachment is a prejudgment ancillary remedy by which a plaintiff is enabled to acquire a lien upon property or effects for satisfaction of a judgment which the plaintiff may obtain in order to prevent the loss or dissipation of the debtor's property." 8 Federal Procedure, Lawyer's Edition, § 21:17 (Nov. 2023 update) (footnotes omitted).

of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."). Federal courts employing state court remedies under Rule 64 cannot exceed what is allowed by state law. Thus, for example, if state law placed limits on attachment to secure funds to satisfy a potential judgment, a federal court sitting in that state would have to honor those limits.

"SDCL chapter 21-17A provides for the extraordinary remedy of prejudgment attachment 'upon the conditions, and in the manner prescribed in this chapter.'" Stromberger Farms, Inc. v. Johnson, 942 N.W.2d 249, 258 n.7 (S.D. 2020) (quoting SDCL § 21-17A-1). Section 21-17A-2 explains how the writ operates in general:

> A writ of attachment shall be issued on the request of a plaintiff any time after a summons and a complaint is filed but before final judgment. It shall be directed to the sheriff or constable of a county in which property of the defendant is supposed to be, and shall require him to attach all the property of the defendant within his county or so much thereof as may be sufficient to satisfy the plaintiff's demand, together with costs and expenses. It shall be in the name of the court and be sealed with its seal and signed by its judge.

Chapter 21 requires a party in a tort action seeking a writ of attachment to establish three things via affidavit:

> Before a writ of attachment may be executed in a tort action, the plaintiff or someone on his behalf shall make and attach thereto an affidavit, stating that a cause of action in tort exists in favor of the plaintiff and against the defendant, that the damages sustained exceed fifty dollars specifying the amount claimed and either:
> (1) The defendant is not a resident of this state; or that his residence is unknown and cannot with due diligence be ascertained; or
> (2) The defendant is a foreign corporation.

SDCL § 21-17A-4. Plaintiff has submitted an affidavit it claims satisfies § 21-17A-4 and argues that a writ of attachment should be issued.

There are at least two problems with the writ of attachment Plaintiff requests. First, Plaintiff has not cited any case or statute suggesting that South Dakota's writ of attachment laws extend to property like Titan Block's bank account located outside the State. Although this Court could not find any South Dakota cases directly addressing the issue, the general rule is that state courts cannot attach out-of-state-property.[3] GM Gold & Diamonds LP v. Fabrege Co., 489 F. Supp. 2d 725, 727–29 (S.D. Tex. 2007) (explaining that "each court which has decided the extraterritoriality issue has refused to give effect to attachment writs aimed at a res outside the territorial boundaries of the forum state"); id. (finding that Texas statutes did not authorize extraterritorial attachment where statutes were silent on issue and two state appellate decisions suggested that statutes only applied to property within state); Corp. Comm'n of Millie Lacs Band of Ojibwe Indians v. Money Ctrs. of Am., 915 F. Supp. 2d 1059, 1061 (D. Minn. 2013) (denying motion to attach property located outside Minnesota because Minnesota law did not allow attachment of out-of-state-property); W. Va. Hosp. & Travel Assoc. v. Am. Water Works Co., No. 2:16-cv-00184, 2018 WL 1404544, at *2–3 (S.D.W. Va. Mar. 19, 2018) (finding that West Virginia law could not be used to attach extraterritorial property); Commodigy OG Vegas Holdings v. ADM Labs, No. 1:19-CV-01382, 2019 WL 6716457, at *2 (N.D. Ohio Dec. 10, 2019) (holding that Ohio's prejudgment attachment statutes could not reach funds in a bank account located outside the State); 6 Am. Jur. 2d Attachment and Garnishment § 23 ("It is a fundamental rule that in attachment or garnishment proceedings the res must be within the jurisdiction of the court issuing the process.").

---

[3] The writ of attachment Plaintiff requests seems more appropriately sought in a federal court in Pennsylvania.

11

Second, Plaintiff has plead very few facts about its claims against Titan Block and seeks an ex parte remedy before serving Titan Block with the complaint or proving up its claim. Although South Dakota's chapter on writs of attachment do not explicitly require any showing of likely success on the merits, that is the norm: "To obtain a writ of attachment, plaintiff usually must present a prima facie case on the underlying claim, and also demonstrate a risk that the property sought to be attached will disappear before judgment can be reached if a writ is not issued. Failure to make these showings generally will lead to denial of the motion for writ of attachment." 11A Mary Kay Kane, Federal Practice & Procedure § 2932 (3d ed. Apr. 2023 update) (footnote omitted). Vineandfig's transfer of money to Titan Block's account is about the only fact that supports Plaintiff's allegation that Vineandfig and Titan Block acted together to defraud Plaintiff. According to Titan Block's website, however, it is a digital asset trading platform. And the November 2022 bank statement for account number 3962189 held by Titan Block at Customers Bank shows that 19 other entities besides Vineandfig made deposits in the account. Although Plaintiff alleges that Titan Block was unjustly enriched by Vineandfig's transfers of the money, it is not entirely clear that Titan Block, given the apparent nature of its business, retained the benefit of the $880,000. Finally, Plaintiff does not explain why it seeks a writ of attachment for account number 30950672 held by Titan Block at Customers Bank when, at least according to counsel's affidavit, the amended complaint, and the November bank statement for account number 3962189, the transfers by Vineandfig were to account number 3962189 (and not 30950672) held by Titan Block at Customers Bank. See Doc. 12 at ¶ 6; Doc. Doc. 8 at ¶ 37; Doc. 12-7.

**III. Conclusion**

This Court is left with too many questions here—existence of federal question jurisdiction, possible lack of personal jurisdiction over Vineandfig and Titan Block, authority to issue a writ of

attachment under South Dakota law on a Pennsylvania bank account, and the propriety of an ex parte application before apparent service of process and without hearing evidence. Therefore, it is

ORDERED that the Ex Parte Application for Writ of Attachment, Doc. 10, is denied. It is further

ORDERED that this Opinion and Order be sealed for 30 days to allow Plaintiff to file a motion, if it so chooses, to seek for the Opinion and Order to remain sealed and to explain why this Opinion and Order should not be available to the public.

DATED this 29th day of January, 2024.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE